The STATE of Ohio, Appellee,

v.

SCRUGGS, Appellant.

[Cite as *State v. Scruggs* (2000), 136 Ohio App.3d 631.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 17747.

Decided Feb. 18, 2000.

David H. Fuchsman, Montgomery County Prosecuting Attorney, for appellee.

L. Patrick Mulligan, for appellant.

FAIN, Judge.

Defendant-appellant Stephanie B. Scruggs appeals from her conviction and sentence for menacing by stalking. Scruggs argues that (1) Ohio's menacing by stalking statute is unconstitutionally vague, (2) the state failed to present sufficient evidence of her guilt, and (3) the jury's verdict is against the manifest weight of the evidence. In support of her void-for-vagueness and insufficiency-of-the-evidence arguments, Scruggs notes, among other things, that while the complaint filed against her alleged that the offense occurred "on or about May 29, 1998," the trial court admitted testimony, over her objections, concerning events that were in "no way closely related" to May 29, 1998.

We conclude that the State failed to present sufficient evidence to prove the allegations in the complaint charging Scruggs with menacing by stalking. Accordingly, the judgment of the trial court is *reversed,* and Scruggs is ordered *discharged.*

## I

Scruggs lived with her mother and four children at 2000 Riverbrook Court, in Trotwood, Ohio. One of her neighbors was Susan DeAngelo–Morris. Up until July, 1997, Morris had experienced no problems with Scruggs, who had been "passingly friendly" to her. However, one day in July 1997, Scruggs allegedly began making unprovoked verbal attacks on Morris. In August, Scruggs got out of her car and started yelling at one of Morris's children. After Morris told Scruggs not to speak to her child that way, Scruggs told Morris that she was going to "beat her ass." Between that day, and September 5, 1997, Scruggs, on five occasions, threatened to "kick [Morris's] ass." On September 5, 1997, Scruggs called Morris over and asked her why she was harassing her. After Morris said, "excuse me," Scruggs told her, "you don't want me to have to beat your white ass."[1] In November 1997, Morris also experienced verbal abuse from

---

1. Scruggs is black. Morris is white. Morris's husband is black. Morris's children are of mixed race.

Scruggs at a video rental store. In December 1997, Scruggs, on two or three occasions, used her car to try to hit Morris's car, while Morris's children were inside it. Scruggs made verbal threats to Morris at this time, calling her "white trash."

Scruggs's conduct continued into 1998. In April and May 1998, Scruggs would call Morris white trash, and tell her, "I'm going to make you pay," and "I'm going to get you," three or four times per week. Scruggs threatened to kill Morris four to five times during this period. On April 29, 1998, Morris heard Scruggs tell one of her children and other neighborhood children, "you sorry little bastards; you broke my window; I'm going to blow your brains out." On May 27, 1998, the Trotwood police arrested Scruggs on disorderly conduct charges,[2] after being contacted by several of her neighbors. As she was being led away, Scruggs threatened Morris and others that she would come back, and "blow their brains out." On May 29, 1998, Morris went down to the police station and filed a complaint against Scruggs. Armed with the complaint, the police again arrested Scruggs, and again, as she was being led away, Scruggs threatened Morris and others by saying she would come back, and "blow [their] brains out."

A jury trial was held on the menacing by stalking charge against Scruggs on March 5, 1999. Morris testified to the facts related above. During the trial, defense counsel objected to the introduction of any testimony regarding events that occurred before May 22, 1998, on the ground that the complaint alleged that Scruggs had committed the offense "on or about May 29, 1998." The trial court overruled defense counsel's objections and permitted the state to introduce testimony concerning events as far back as July 1997. The jury convicted Scruggs, and the trial court sentenced her accordingly.

Scruggs appeals from her conviction and sentence for menacing by stalking.

## II

Scruggs's first, second, and third assignments of error state as follows:

"I. Ohio's menacing by stalking statute is void for vagueness and therefore is unconstitutional.

"II. The verdict against Mrs. Scruggs was not supported by the sufficiency of the evidence.

"III. The verdict against Mrs. Scruggs was against the manifest weight of the evidence."

---

2. This charge was tried separately to the bench.

 In her second assignment of error, Scruggs argues that the verdict against her was not supported by sufficient evidence. We agree.

R.C. 2903.211(A) provides that "[n]o person by engaging in a pattern of conduct shall knowingly cause another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." " 'Pattern of conduct' means two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents." R.C. 2903.211(C)(1). " 'Mental distress' means any mental illness or condition that involves some temporary substantial incapacity or mental illness or condition that would normally require psychiatric treatment." R.C. 2903.211(C)(2).

Initially, Scruggs argues that in order for the state to prove the "pattern of conduct" element, the state was obligated to show that Scruggs had committed two separate acts, on two different days. Scruggs argues that because the complaint filed against her alleged that the pattern of conduct occurred on one date, i.e., May 29, 1998, the state was unable to meet its burden of proving every element of the offense of menacing by stalking. We find this argument unpersuasive.

 R.C. 2903.211 does not require that the pattern of conduct be proved by events from at least two different days. Arguably, a pattern of conduct could arise out of two or more events occurring on the same date, provided that there was a sufficient interval between them. This observation, notwithstanding, however, the state does not contend in this case that more than one incident took place on May 29, 1998. The complaint against Scruggs indicates that the offense took place "on or about May 29, 1998." Thus, in order to prove the charge set forth in the complaint, the state had to show that Scruggs engaged in two or more actions or incidents on or about May 29, 1998, in order to prove the "pattern of conduct" element.

The evidence showed that Scruggs had made threats to her neighbors and their children on May 27, 1998. The Trotwood police were contacted on that date, and Scruggs was arrested for disorderly conduct. As she was being led away, Scruggs told Morris and her neighbors that "she was going to come back * * * and blow [their] heads off." On May 29, 1998, the evidence showed that Morris went to the Trotwood police station and swore out a complaint against Scruggs. Later that evening, the police came by and arrested Scruggs once more, this time, on Morris's complaint. As she was being led away by the police, Scruggs again told Morris that "she was going to come back * * * and blow [their] heads off." However, the prosecutor failed to have Morris provide any testimony regarding the event which prompted her to go down to the police station to file a complaint against Scruggs. Without an amendment to the complaint, the threats

that Scruggs made to Morris *after* she had been arrested on the complaint filed by Morris cannot count as one of the "two or more actions or incidents" needed to establish the pattern of conduct element charged in the complaint. Thus, assuming that the threats made by Scruggs to Morris on May 27 constitute one action or incident that occurred "on or about May 29, 1998," the State failed to prove the pattern of conduct element, because it never proved that a second action or incident took place, prior to Scrugg's May 29 arrest, pursuant to Morris's complaint.

 The state placed into evidence a significant amount of testimony showing that a number of incidents took place between Scruggs and Morris and her children, between July 1997 and May 29, 1998. The prosecutor introduced this evidence to establish "the two or more actions or incidents" needed to make up the pattern-of-conduct element. The trial court, over defense counsel's objections, admitted the evidence for this purpose. This constituted error. While the state may introduce evidence of "uncharged misconduct" or "other acts" in order to prove, among other things, that a defendant's seemingly innocent acts, in reality, amounted to knowing attempts to cause mental distress, those other acts cannot be used to establish the "two or more actions or incidents" requirement of the pattern of conduct element. See *State v. Bilder* (1994), 99 Ohio App.3d 653, 658, 651 N.E.2d 502, 505–506.[3] Thus, evidence regarding events that are not the subject of the complaint cannot be used to establish the "two or more actions or incidents" needed to prove the pattern of conduct element. Here, the events that were the subject of the complaint, occurred "on or about May 29, 1998." Therefore, the state was required to prove that Scruggs engaged in two or more actions or incidents, on or about May 29, 1998, knowing they would cause Morris to believe that she would cause physical harm to her, or knowingly causing Morris mental distress. For the reasons set forth above, the state failed to meet its burden.

The state could have avoided the result reached in this case if it had simply set forth the date of the offense in the complaint as having occurred between July 1997 and May 29, 1998, or if it had simply adduced testimony from Morris regarding the incident on May 29, which led her to file a complaint against Scruggs. Because the state failed to prove the allegation set forth in the

---

3. Indeed, when the trial court admits other acts evidence in this type of case, the defendant is entitled to a limiting instruction, upon request. *Id.* Here, Scruggs did not ask for a limiting instruction; however, the trial court did not admit this evidence pursuant to the exception for other acts evidence contained in Evid.R. 404(B). Instead, the trial court admitted the evidence in order to allow the State to establish the pattern of conduct element, despite the fact that the complaint stated that the offense occurred on or about May 29, 1998.

complaint, the judgment of the trial court must be reversed, and Scruggs must be discharged.

Accordingly, Scrugg's second assignment of error is sustained. As a result of our disposition of Scrugg's second assignment of error, Scrugg's first and third assignments of error are moot, and we need not decide them. See App.R. 12(A)(1)(c).

### III

Scrugg's second assignment of error having been sustained, and her first and third assignments of error having been ruled moot, the judgment of the trial court is *reversed,* and Scruggs is ordered *discharged.*

*Judgment reversed.*

GRADY, P.J., and WOLFF, J., concur.